IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KATHLEEN SULLIVAN,

    Plaintiff,

v.                                               Case No. 3:08cv486/LAC

PAUL NEE d/b/a EPAYMENT CONSULTANTS
and EPAYMENT CONSULTANTS, LLC,

    Defendants.
_____/

# **O R D E R**

Pending before the Court are Motions for Summary Judgment filed by Plaintiff (doc. 57) and by Defendant (doc. 61) and documents in support thereof, as well as Defendant's Amended Motion to Dismiss (doc. 12), Plaintiff's Motions To Amend Complaint and for Joinder (docs. 44, 48, 56), and Defendant's Motions to Strike or Stay (docs. 72, 82).[1] The Court has taken the motions and their responses under advisement and is now prepared to

---

[1] Defendant ePayment Consultants asserts that Defendant Paul Nee d/b/a ePayment Consultants has never been served in this case. Plaintiff has neither responded to this assertion nor provided any evidence of service. In view of the facts of this case, it appears that the two defendants are so integrally related that the Court's ruling will apply to this unserved Defendant as well. *See Rosser v. Chrysler Corp.*, 864 F.2d 1299, 1304 (7th Cir. 1988); *Loman Devel. Co. v. Daytona Hotel & Motel Suppliers Inc.*, 817 F.2d 1533, 1537 (11th Cir.1987).

rule. Upon due consideration of the motions, the Court finds Summary Judgment on behalf of Defendant should be granted and the remaining motions denied.

## I. BACKGROUND

Unless otherwise noted, the following facts are free from dispute. In May of 2002, Defendant ePayment entered into a written Referral Agreement with Dan Arroyo,[2] who is presently not a party to this action but is the subject of Plaintiff's motion for joinder of party plaintiff. Under Defendant's written agreement with Arroyo, Arroyo would find merchants to subscribe to Defendant's credit card processing services, and Defendant would pay Arroyo a "residual" commission on the revenues received from each account that he had referred. In December of 2002, Arroyo orally contracted with Plaintiff to act as a sales agent for Arroyo, finding merchants to enlist with Defendant's services. In compensation, Arroyo would pay Plaintiff a percentage of the residuals he received from Defendant on the accounts she had referred.

This arrangement continued until March of 2007, when Defendant sold its portfolio of accounts to another company, which included all the accounts referred by Arroyo and his agents, including Plaintiff. Thereafter, Defendant ceased paying residuals to Arroyo,

---

[2] From late 2006 to early 2007, Defendant was in the process of renewing their contract with Arroyo, but although Arroyo executed the new contract and returned it to Defendant, there is no indication that the contract was executed on Defendant's end. Plaintiff asserts that this is of no consequence since the contract was in relevant respects unchanged and because the parties acted as they always had under the contractual arrangement. Since there is no newly executed contract in the file, the Court for purposes of this Order agrees with Plaintiff's assessment.

evidently because of its belief that it was no longer contractually bound to make these payments. Because Plaintiff stopped receiving residual payments as well, she commenced this lawsuit, claiming her entitlement to these residuals under various contract theories.

As Defendant denies that it has any contractual relationship with Plaintiff, the scope of their relationship forms the central issue in this case. No Referral Agreement or other written contract was drafted between Defendant and Plaintiff. The contract that was executed between Defendant and Arroyo does not mention Plaintiff nor, for that matter, does it appear to contemplate that Arroyo could hire on or contract with sales agents like Plaintiff. Defendant's residual payments on the accounts were made exclusively to Arroyo, not to Plaintiff.

However, this is not to say that Defendant was oblivious to Plaintiff's presence in the arrangement. Defendant understood that some of the agents with which it contracted, such as Arroyo, would hire sales agents such as Plaintiff. In fact, Plaintiff met and visited with Defendant's office staff over the course of a few days when she was in the area. Plaintiff also asserts that one of Defendant's executives, Jim Thompson, orally contracted with her:

> Plaintiff. I had an oral contract with Jim Thompson when I went down there to meet with them.
>
> Q. Tell me about your oral contract with Jim Thompson.
>
> Plaintiff. The oral contract was they take care of my clients if I send them business.
>
> Q. That's the extent of it?

| | |
|---|---|
| Plaintiff. | In so many words. |
| Q. | Tell me everything that you recall about that conversation with Jim Thompson. |
| Plaintiff. | It's been so many years. Basically the conversation was I bring them clients and they take care of them. That's just how this industry works. |
| Q. | Were any other terms of any other contracts discussed? |
| Plaintiff. | No. |
| Q. | No payments terms, nothing like that? |
| Plaintiff. | No. |
| Q. | Just I send you business, and I'm going to get money? |
| Plaintiff. | That was through Dan's contract. |
| Q. | Right. So your contract, your alleged contract with Mr. Thompson was – consisted of a conversation in which you said, okay, I'll send my customers to you and you're going to pay Dan Arroyo commission on those, and Mr. Arroyo is going to pay me a percentage of the commission? |
| Plaintiff. | That's correct. |
| Q. | That's the extent of your contract with Mr. Thompson, right? |
| Plaintiff. | Yes. |

Doc. 62-5, Deposition of Plaintiff, at 17-18.

While Plaintiff also references a conversation she had with Thompson in which they generally discussed the business and he told her that the company would "take care of" her,

she could not describe specifically what that meant, nor did she say that any contract terms were discussed. Doc. 62-5 at 155-56.

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). "[T]he substantive law will identify which facts are material" and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *See id.*

At the summary judgment stage, a court's function is not to weigh the evidence to determine the truth of the matter, but to determine whether a genuine issue of fact exists for trial. *See id.* at 249, 106 S. Ct. at 2510–11. A genuine issue exists only if sufficient evidence is presented favoring the nonmoving party for a jury to return a verdict for that party. *See id.* "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975

F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust Co. v. Fidelity and Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).

When assessing the sufficiency of the evidence in favor of the nonmoving party, the court must view all the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving party." *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993). The court is not obliged, however, to deny summary judgment for the moving party when the evidence favoring the nonmoving party is "merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249–50, 106 S. Ct. at 2511. "A mere 'scintilla' of evidence supporting the . . . [nonmoving] party's position will not suffice" to demonstrate a material issue of genuine fact that precludes summary judgment. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (quoting *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512).

### III. DISCUSSION

Plaintiff seeks damages based on the discontinued residual payments to her, claiming 1) breach of contract; 2) breach of an oral contract; 3) breach of a series of oral contracts; 4) breach of a third party beneficiary contract; 5) promissory estoppel; 6) unjust enrichment and 7) quantum meruit.

Plaintiff's first three counts stem from her claim that, despite the lack of a written agreement, she and Defendant nevertheless established a contract through their course of

dealing, exchange of pertinent documents, their mutual, verbal understanding, and their performance thereon. However, none of these endeavors establish the requisite contract.

First, Plaintiff fails to establish the existence of an oral contract. Though she alleges she met with officers representing Defendant and discussed business arrangements, Plaintiff essentially admits that the only clear understanding was that Arroyo was the one with an established contract with Defendant and that Plaintiff was hired, paid and contractually bound to Arroyo. Beyond this, she fails to identify a single contract term that was discussed or agreed upon by the parties. Doc. 62-5 at 155-56.

For an oral contract to be established, it must be shown that the parties reached a clear and definite agreement with no essential terms left open. *See W.R. Townsend Contracting, Inc. v. Jensen Civil Const., Inc.*, 728 So.2d 297, 300 (Fla. 1st DCA 1999); *Jacksonville Port Authority v. W.R. Johnson Enterprises*, *Inc.*, 624 So.2d 313 (Fla. 1st DCA 1993). This "meeting of the minds" requirement was not met in this case. If anything, Plaintiff's verbal interaction with Defendant's employees tended only to shore up what each party already understood, that Defendant would continue to act in accordance with its contract with Arroyo, paying him for referrals, while Plaintiff would in turn operate as per her agreement with Arroyo and receive commissions from him. The fact that Plaintiff and Defendant met and discussed this business arrangement in general did not thereby establish a new contract between the two.

Plaintiff's contention that Thompson told her the company would "take care of" her is of marginal help. Without more, a casual, encouraging remark offers little proof that Plaintiff and Defendant established any sort of business arrangement independent of the one that existed through Arroyo, and it certainly lacks the definiteness needed to establish an oral contract.

Moreover, even if an oral contract were found to have been formed, it would be barred by the applicable Statute of Frauds, which provides:

> [n]o action shall be brought . . . upon any agreement that is not to be performed within the space of 1 year from the making thereof . . . unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith or by some other person by her or him thereunto lawfully authorized.

Fla. Stat., § 725.01 (2009). It is obvious from the facts of this case and the complaint itself that any oral agreement between Plaintiff and Defendant formed during the time of her hiring would have been designed to extend beyond one year.

Plaintiff does not contest this point but asserts an exception to the Statute of Frauds that occurs when a contract is ratified by action or conduct, specifically, that Plaintiff performed its duties under the contract as contemplated by the parties. *See Fresh Capital Financial Services, Inc. v. Bridgeport Capital Services, Inc.*, 891 So.2d 1142, 1144 -46 (Fla. 4th DCA 2005); *Brodie v. All Corp. of USA*, 876 So.2d 577, 579 (Fla. 4th DCA 2004); *Gateway Cable T.V., Inc. v. Vikoa Contruction [sic] Corp.*, 253 So.2d 461 (Fla. 1st DCA 1971). Plaintiff also claims that each of her many customer referrals upon which she seeks

payment constituted separate oral contracts, each of which she fully performed within the space of one year. *See Fresh Capital Financial Services, Inc. v. Bridgeport Capital Services, Inc.*, 891 So.2d 1142, 1144 -46 (Fla. 4th DCA 2005).

While it is true that a binding contract may be found where the parties have performed as if one existed under terms mutually understood by the parties, in this case the performance of the parties was in concert with the Arroyo contract, not with any independent contract created between Plaintiff and Defendant. Plaintiff does not contest that, upon her commencement of her duties, she made her referrals under the auspices of her own oral agreement with Arroyo, that Defendant paid Arroyo under the terms of *its* own contract with Arroyo, and that Arroyo then paid Plaintiff as per their agreement. Thus, Plaintiff's performance argument encounters the same pitfall as her oral contract argument; namely, that the performance of the parties was carried out in conformity with the existing contracts between her and Arroyo and between Arroyo and Defendant. The respective business arrangements were adequately defined by these contracts, and the business transactions were smoothly conducted thereunder – at least until the time of the alleged breach. Plaintiff's attempt to "triangle in" a third contract directly between herself and Defendant is superfluous and simply not contemplated by the parties. Her claims of an oral contract are therefore unavailing.[3]

---

[3] The Court therefore need not reach Defendant's argument that the doctrine of full or part performance may remove an agreement from the Statute of Frauds only in cases where specific performance of a contract for the conveyance of land is involved. *See Collier v. Brooks*, 632 So. 2d 149, 155-157 (Fla. 1st DCA 1994).

Plaintiff next claims a breach of contract for which she was a third party beneficiary. It is not entirely clear whether Plaintiff is implicating Defendant's contract with Arroyo or the many contracts drawn up between Defendant and the customers Plaintiff referred, or both. In any event, to sustain such a claim, Plaintiff must identify a contract that manifestly intended to benefit her directly as a third party. *See Hollywood Lakes Country Club v. Cmty. Ass'n Servs., Inc.*, 770 So. 2d 716, 719 (Fla. 4th DCA 2000); *Networkip, LLC v. Spread Enters., Inc.*, 922 So. 2d 355, 358 (Fla. 3d DCA 2006). Plaintiff falls well short of the mark because she fails to show that any of the contracts in question even reference the Plaintiff, much less demonstrate any intent to directly benefit her.

Plaintiff again relies on her "course of dealing" argument to state that, in the business arrangements between herself, Arroyo, and Defendant, it was obvious that she was an intended beneficiary as far as receiving commissions. The evidence does not bear this out, however, as the matter of Plaintiff's commissions were, if anything, the subject of her contract with Arroyo, not with Defendant. Perhaps nothing illustrates this better than to realize that, if Arroyo and Plaintiff terminated their contract together, Arroyo's contract with Defendant would continue unabated.[4]

Next, Plaintiff asserts equitable claims of promissory estoppel, unjust enrichment, and quantum meruit. To establish promissory estoppel, Plaintiff must show that 1) she

---

[4] At best, Plaintiff's relationship with Defendant would be defined as that of an "incidental beneficiary" to whom no duty is owed and for whom no right is created. *See* Restatement (Second) of Contracts § 302 and Illustration 19 (1981) ("A contracts to erect a building for C. B then contracts with A to supply lumber needed for the building. C is an incidental beneficiary of B's promise, and B is an incidental beneficiary of C's promise to pay A for the building").

detrimentally relied on a promise made by Defendant, 2) Defendant reasonably should have expected the promise to induce to take action in reliance thereon, and 3) injustice can be avoided only by enforcement of the promise against Defendant. *See W.R. Grace & Co. v. Geodata Services, Inc.*, 547 So.2d 919, 924 (Fla. 1989); *W.R. Townsend Contracting, Inc. v. Jensen Civil Const., Inc.*, 728 So.2d 297, 302 (Fla. 1st DCA 1999). Plaintiff identifies no promise that was made by Defendant directly to her, however, and for this reason alone her claim fails.

Nonetheless, the Court also finds the equitable consideration inherent in the third factor to reflect the fundamental problem with Plaintiff's case as a whole. It is evident from the record that the alleged breach – the entire focal point of this litigation – occurred when Defendant sold its interest in Arroyo's portfolio of accounts to another company. Defendant apparently determined that it was permitted to act as it did under the terms of its contract with Arroyo. Arroyo apparently disagrees. Whether Defendant's actions constituted a breach of their contract remains to be determined, but what is abundantly clear is that Arroyo's contract with Defendant is where the true battleground lies. Plaintiff naturally has an interest in the outcome of that battle, but if Arroyo were to win, the proper procedure would be for Defendant to pay damages to Arroyo. Plaintiff would then ostensibly be able to collect from Arroyo under the terms of their own contract. It is an unfounded proposition, and actually an inequitable one, to create a separate contract "on the side" between Plaintiff and

Defendant, and at worst such a contract could well act in derogation of the express contract between Arroyo and Defendant.

As should be evident, the Court can hardly conclude as a matter of equity that it would be unjust to deny Plaintiff compensation when the matter of Defendant's contractual liability to Arroyo has yet to be determined. Indeed, resolution of that contractual matter would likely render Plaintiff's claims moot. The Court cannot grant equitable relief in this situation.

Similarly, unjust enrichment is a legal fiction in which a contract is implied in law as a matter of equity even in the absence of words or conduct between the parties to suggest an agreement. *See Doug Hambel's Plumbing, Inc. v. Conway*, 831 So.2d 704, 705 (Fla. 4th DCA 2002). A claim of unjust enrichment requires proof that 1) a benefit was conferred upon Defendant, 2) Defendant either requested the benefit or knowingly and voluntarily accepted it, and 3) it would be inequitable under the circumstances for Defendant to retain the benefit without paying the value thereof. *See W.R. Townsend Contracting*, 728 So.2d at 303; *Turner v. Fitzsimmons*, 673 So.2d 532, 536 (Fla. 1st DCA 1996).

Here again, the Court is in no position to imply an independent contract between Plaintiff and Defendant when an actual contract that is at least facially comprehensive exists to resolve this matter. The Court can hardly find Defendant's actions unjust when its actions might be found completely within bounds of its contract with Arroyo. *See American Honda Motor Co., Inc. v. Motorcycle Information Network, Inc.*, 390 F.Supp.2d 1170, 1178 (M.D. Fla. 2005); *Bowleg v. Bowe*, 502 So.2d 71, 72 (Fla. 3d DCA 1987) (holding that unjust

enrichment is equitable in nature therefore unavailable where there is an adequate legal remedy). Therefore, unjust enrichment cannot be found.

Last, to establish quantum meruit, the parties must be factually found to have entered into an agreement, albeit one without insufficient clarity, such that "a fact finder must examine and interpret the parties' conduct to give definition to their unspoken agreement .... [in order to give] the effect which the parties ... presumably would have agreed upon if, having in mind the possibility of the situation which has arisen, they had contracted expressly thereto." *Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 806 (11th Cir. 1999) (quoting *Commerce Partnership 8098 Ltd. Partnership v. Equity Contracting Co.*, 695 So.2d 383, 385-86 (Fla. 4th DCA 1997)). Thus, quantum meruit is "inferred in whole or in part from the parties' conduct, not solely from their words." *Commerce Partnership 8098 Ltd. Partnership v. Equity Contracting Co.*, 695 So.2d 383, 385 (Fla. 4th DCA 1997).

The trouble with this claim, by now familiar, is that contracts already exist whereby the parties have expressly agreed to the their business arrangement, and Plaintiff offers no rationale or factual basis by which a separate, independent contract should be inferred. *See Harding Realty, Inc. v. Turnberry Towers Corp.*, 436 So.2d 983, 984 -985 (Fla. 3d DCA 1983); *Solutec Corp. v. Young & Lawrence Associates, Inc.*, 243 So.2d 605, 606 (Fla. 4th DCA 1971) (holding that the law will not imply a contract where an express contract exists regarding the same subject matter). Plaintiff's claim of quantum meruit therefore fails.

Because there is no legal basis for finding a breach of contract in this case nor any other contract that may be implied or equitably found, the Court finds that summary judgment on behalf of Defendants should be entered.

In light of the Court's ruling on summary judgment, it is now determined that Plaintiff's motion for joinder of Dan Arroyo as Party Plaintiff should be denied. Defendant's contention is well-taken that the motion was filed late when Plaintiff was in position to have filed it significantly sooner. *See Moyer v. Walt Disney World Co.*, 146 F. Supp. 2d 1249, 1252 (M.D. Fla. 2000); *Payne v. Ryder Sys., Inc. Long Term Disability Plan*, 173 F.R.D. 537, 540 (M.D. Fla. 1997). Moreover, were the motion to be granted, discovery would have to commence anew, and much of the legal complexion of the case would change. The thrust of Arroyo's claims would derive from whether liability existed under his contract with Defendant, while the litigation to this point has simply been whether Plaintiff could be found to have had a contract with Defendant.

Last, the present styling of this case and the relationship of the parties seems inappropriate, especially given the Court's summary judgment ruling. As discussed previously, should Arroyo successfully sue Defendant or otherwise gain a settlement on his demand for residual payments, then Plaintiff would be entitled to a share proceeds as per her contract with Arroyo. Should Arroyo not remunerate Plaintiff, Plaintiff could elect to sue Arroyo, thus making him a defendant in a civil action instead of a co-plaintiff. In any event,

the issue of Arroyo's contract with Defendant seems the next logical step in this legal scenario, should Arroyo elect to take it.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment (doc. 57) is **DENIED.**

2. Defendant's Motion for Summary Judgment (doc. 61) is **GRANTED**.

3. Consistent with this order, the Clerk of Court is directed to enter summary judgment in favor of Defendant EPAYMENT CONSULTANTS, LLC. Plaintiff shall take nothing further by this action and goes without day.

4. Plaintiff's Motions To Amend Complaint and for Joinder (docs. 44, 48, 56) are **DENIED**.

5. All remaining pending motions are **DENIED** as moot. As all claims are resolved as against all parties in this case, the Clerk of Court is directed to enter final judgment and close this case.

**ORDERED** on this 17th day of July, 2009.

                                                s/ *L.A. Collier*
                                                  Lacey A. Collier
                                         Senior United States District Judge